IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANTRELL TEEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:18 -CV-992-MAB |
| | ) | |
| LT. KARL PANNIER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Antrell Teen, an inmate currently housed in Menard Correctional Center, filed this *pro se* action pursuant to 42 U.S.C. § 1983 alleging that he suffered constitutional violations while at the St. Clair County Jail (Doc. 8). Now pending before the Court is Defendant Karl Pannier's motion for summary judgment (Doc. 56). For the reasons set forth below, the motion for summary judgment will be granted.

## PROCEDURAL HISTORY

Plaintiff, proceeding *pro se*, filed this action on March 13, 2018 (Doc. 2). On April 19, 2018, the Court entered an Order severing the current matter from the original complaint. The Court categorized the claim at issue in this case (Count 3) as follows:

> **Count 3:** Fourteenth Amendment due process and conditions claims against Supervisor John Doe #2, for maintaining Plaintiff's placement in a locked-down cellblock (H-Block) where he was denied access to the law library, and denied hygiene items, cleaning supplies, and envelopes, when Plaintiff had committed no infraction.

(Doc. 1, pp. 7, 13; Doc. 7, p. 1).

On May 24, 2018, in its initial merit review, the Court presumed that Plaintiff was a pretrial detainee, and that his claim arose under the Fourteenth Amendment (Doc. 7, pp. 3-4). The Court screened Plaintiff's complaint as to Count 3, and dismissed it without prejudice pursuant to 28 U.S.C. § 1915A, ordering Plaintiff to submit an amended complaint if he wished to further pursue Count 3 (*Id*. at 7-8).

On June 12, 2018, Plaintiff filed a first amended complaint (Doc. 8). In his amended complaint, Plaintiff again alleged he was not given a hearing before being placed on lockdown in November-December 2016 along with the other prisoners on H-Block (*Id*. at 2). Plaintiff also raised three distinct claims against John Doe #2 regarding conditions-of-confinement and retaliation and added two new claims regarding the denial of dental care against Head Nurse Deborah Hale (*Id*. at 1-2). Plaintiff also clarified that during the relevant time period, he was convicted of criminal charges (*Id*. at 2).

On August 6, 2018, the Court issued a Merit Review Order regarding Plaintiff's first amended complaint pursuant to 28 U.S.C. § 1915A (Doc. 9). In this Order, the Court dismissed the due process and access-to-courts portions of Count 3 without prejudice (*Id*. at 11). Furthermore, the Court noted that, "[a]s a convicted prisoner, the Eighth Amendment applies to his conditions-of-confinement claims, even though he remains at the St. Clair County Jail" (*Id*. at 6).[1] Accordingly, the unsanitary-conditions and retaliation portions of Count 3 survived threshold review under the Eighth Amendment (*Id*. at 11).

---

[1] *See Smith v. Dart*, 803 F.3d 304 (7th Cir. 2015); *see also Farmer*, 511 U.S. at 832.

The St. Clair County Sheriff ("Sheriff") was added as a Defendant in his official capacity, to serve as a respondent for discovery aimed at identifying the unknown defendant, and Plaintiff's claims against Deborah Hale were severed into a new case pursuant to Fed. R. Civ. P. 20(a)(2), and Hale was dismissed from this action with prejudice (*Id.* at 11-12). Therefore, the only claim that remained in *this action* was Count 3 against Defendants John Doe #2, and the Sheriff (official capacity), for unsanitary conditions of confinement and retaliation (*Id.* at 12).

On October 1, 2018, the Sheriff answered by denial and raised the affirmative defense of exhaustion (Docs. 13-15). On January 4, 2019, the Sheriff filed a motion for summary judgment on the issue of exhaustion (Doc. 18). An evidentiary hearing, pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was held on May 14, 2019 (Doc. 40). Following the *Pavey* hearing, the undersigned issued a Report and Recommendation that the Court deny the motion for summary judgment (Doc. 43, p. 1). On June 6, 2019, Judge Gilbert adopted the undersigned's Report and Recommendation in its entirety (Doc. 46). The Sheriff subsequently identified John Doe #2 as Lieutenant Karl Pannier (Doc. 45), and the Court substituted Pannier as a party and dismissed John Doe #2 and the Sheriff and from this case (Doc. 46).

On November 8, 2019, Defendant Pannier filed a motion for summary judgment (Doc. 56). This case was transferred to the undersigned for all proceedings and entry of final judgment in accordance with 28 U.S.C. § 636(c) on December 9, 2019 (Doc. 60). Plaintiff then filed a response in opposition to the motion for summary judgment on December 10, 2019 (Doc. 62).

## FACTUAL BACKGROUND

Plaintiff was booked in the St. Clair County Jail ("the Jail") on December 15, 2015, as a pre-trial detainee (Doc. 56-2, p. 1). Plaintiff remained confined at the St. Clair County Jail through the date of his conviction on June 20, 2016, until his transfer to Menard Correctional Center ("Menard") nearly three years later on April 19, 2019 (Doc. 9, p. 2; Doc. 36, p. 1). Defendant Pannier was employed as the Lieutenant at the St. Clair County Jail, having served in that rank since 2013 (Doc. 56-5, p. 1).

On or around March 14, 2016, Plaintiff was transferred to J-Block and remained there until May 18, 2016 when he has transferred to H-Block (Doc. 56-6, p. 11). Plaintiff was housed in H-Block from May 18, 2016 to November 29, 2016 and then again from December 6, 2016 to December 14, 2016 (*Id*).[2]

This case involves conditions of confinement during an administrative lockdown on the H-Block that began on November 25, 2016. In the weeks leading up to the lockdown, there were several incidents on H-Block (Doc. 56-6). On November 3rd there was a physical altercation between several inmates (*Id*. at p. 1). That same day, officers smelled marijuana, which resulted in a search of the cells (*Id*. at p. 3). On November 15th, there was a physical altercation between several inmates (*Id*. at p. 4). On November 16th, there was another physical altercation between several inmates (*Id*. at p. 5).

On November 25th, yet another physical altercation occurred between some H-Block detainees (*Id*. at p. 6). Plaintiff was not involved in this incident (*Id*). According to

---

[2] Plaintiff was housed in the infirmary for dental work from November 29, 2016 until December 6, 2016 when he returned back to H-Block (Doc. 56-1, p. 8; 56-6, p. 11).

the incident report, Sergeant Nichols confronted several inmates about what happened

and no one offered any information (*Id.* at pp. 6, 10). Defendant Pannier also attempted

to gather information and learned that the altercation involved a group of detainees

wearing facemasks who rushed another inmate and that the incident was a result of

friction that had been building for some time (*Id.* at p. 10). Thereafter, Defendant placed

the entire H-Block on administrative lockdown "due to the level of participation and lack

of cooperation from the occupants of the block" (*Id.*; *see also* Doc. 56-5) According to the

policies of the St. Clair County Jail in effect at that time, the block was to have all

privileges suspended and the lockdown was to last a minimum of 72 hours (Doc. 56-5;

56-7, p. 6).

Although H-Block was in an administrative lockdown, the Jail's law library

schedule still provided time for H-Block to have library access on Wednesdays (Doc. 56-

17). The Law Library Log indicates that inmates from H-Block visited the library during

the lockdown on December 7, 2016 (5-6 inmates), December 14th (four inmates), and

December 28th (three inmates), none of whom were Plaintiff (Doc. 56-18, pp. 14, 23, 31).

Inmates on H-Block were also able to secure cleaning supplies during the

lockdown. The Jail's Mop/Broom Log for H-Block shows that the mop and broom were

checked out by detainees on November 29th, November 30th, December 1st, December

7th, December 8th, December 12th, and December 14th (Doc. 56-10, p. 3). However, the

Mop/Brown Log does not indicate which detainees checked out the mop and broom (*Id*).

Maintenance work was also done on H-Block during the lockdown. The

Maintenance Request Form indicates that the Jail's Maintenance Department responded

to maintenance calls on December 2, 2016, and repaired the sink in Cell #5 and maintained the flushing and running of the toilets in Cells #2 and #4 of H-Block (Doc. 56-11). According to the Jail's Cell Assignment History, Plaintiff was housed in H-Block Cell #1 during the lockdown (Doc. 56-6, p. 11). However, Plaintiff testified he was housed in Cell #5 on November 25th (Doc. 56-1, p. 32). When presented with the maintenance form, Plaintiff testified the maintenance on Cell # 5 (which occurred on December 2nd) would have been while he was in the infirmary and not in H-Block (56-1, pp. 87-88; 56-11).

On November 29, 2016, Plaintiff was transferred to the infirmary to receive dental work and would need to be administered controlled medications in connection with his dental work (Doc. 56-6, p. 11; Doc. 56-1, p. 26). Plaintiff remained in the infirmary until December 6th and then he returned to H-Block (Doc. 56-6, p. 11). On December 6th, Plaintiff filed a complaint regarding a commissary order he never received (Doc. 56-14, p. 1). The supervisor noted that Plaintiff's commissary was being held because Plaintiff was still on medical reservation per the nurse (*Id*). On December 11th, after returning to H-Block from the infirmary, Plaintiff placed another order for commissary including toothpaste, deodorant and various food items (Doc. 56-13, p. 26).

On December 14, 2016, Plaintiff was transferred from H-Block to AB-Block, which he described as a bigger and better block (Doc. 56-6, p. 11; Doc. 56-1, p. 31). Plaintiff claims the lockdown was ongoing at the time of his transfer (Doc. 8, p. 2). There is nothing in the record that explicitly states when the lockdown of H-Block ended. However, the Daily Shift Leader Report Entry from December 7 indicates that officers were advised that detainees in H-Block were getting their phone and visiting privileges back that evening

(Doc. 56-9, p. 1; Doc. 56-15). And, in response to another detainee's complaint, a supervisor noted that on December 7, 2016, "they have been given phone, visits, and hygiene back" (Doc. 62, p. 42). Accordingly, the restoration of nearly all privileges occurred as early as December 7th, and the only restriction between December 7th and December 14th was that of television and movement throughout the facility that a normal inmate receives (Doc. 56-1, p. 18).

## **LEGAL STANDARD**

Summary Judgment is proper if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Factual disputes are genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented, and they are material only if their resolution might change the suit's outcome under the governing law." *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (citation and internal quotation marks omitted).

In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter, but instead to determine whether there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir.1994). In deciding a motion for summary judgment, "[a] court may not . . . choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the

nonmoving party." *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted).

## ANALYSIS

### I.      Conditions of Confinement

The Eighth Amendment prohibition on cruel and unusual punishment forbids the unnecessary and wanton infliction of pain.[3] *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citation omitted). To succeed on a claim related to conditions of confinement, a plaintiff must establish both an objective and subjective element. *See Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008).

As to the objective element, a prisoner must establish that the conditions deny him "the minimal civilized measure of life's necessities," creating an excessive risk to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To do so, he must show that the conditions resulted in an unquestioned and serious deprivation of basic human needs such as food, medical care, sanitation, or physical safety. *See Rhodes*, 452 U.S. at 347. The Eighth Amendment "does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001). Rather,

---

[3] In its initial threshold order, the Court assumed Plaintiff was a pretrial detainee because he was incarcerated at the St. Clair County Jail (*See* Doc. 7). Upon screening Plaintiff's amended complaint, the Court learned that Plaintiff was convicted on June 20, 2016, but remained at St. Clair County and was a convicted person during the period of time when his claim here arose (Doc. 9, p. 2)  This is important because it means that Plaintiff's conditions of confinement claim is governed by the Eighth Amendment, not the Fourteenth Amendment. *See, e.g., Hardeman v. Curran*, 933 F.3d 816, 821 (7th Cir. 2019)(applying an objective reasonableness standard under the Fourteenth Amendment to pretrial detainee's conditions of confinement claim but explaining that the Eighth Amendment deliberate indifference standard applies to claims by "convicted prisoners.").

"extreme deprivations are required to make out a conditions-of-confinement claim." *Turner v. Miller*, 301 F.3d 599, 603 (7th Cir. 2002) (citations and quotations omitted).

The subjective component of a claim for unconstitutional conditions of confinement requires demonstrating that a defendant had a culpable state of mind, that is that a defendant acted with deliberate indifference to a substantial risk of serious harm to the prisoner. *See Farmer*, 511 U.S. at 837, 842. While mere negligence does not amount to a constitutional violation, a plaintiff satisfies the deliberate indifference standard by showing that a prison official acted, or failed to act, despite the official's knowledge of a substantial risk of serious harm from the alleged unconstitutional conditions. *See Farmer*, 511 U.S. at 842; *Davidson v. Cannon*, 474 U.S. 344, 347-348 (1986). That is, prison officials must act to prevent "unreasonable peril" or to address "preventable, observed hazards that pose a significant risk of severe harm to inmates." *Anderson v. Morrison*, 835 F.3d 681, 683 (7th Cir. 2016).

### A. Objective Component – Seriousness of the Conditions

Prison officials are responsible for providing inmates with the "basic necessities of civilized life." *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989). However, jail conditions may be uncomfortable and harsh without violating the Constitution. *See Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997); *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) ("The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones[.]")(citing *Farmer*, 511 U.S. at 832). Conditions of confinement that would not independently violate the Constitution, if endured simultaneously, may establish a sufficiently serious deprivation, but "only when they have a mutually enforcing effect

that produces the deprivation of a single, identifiable human need . . . ." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). In considering the objective component, there are two primary issues the Court will consider: (1) the nature of the conditions and; (2) the length of confinement under the conditions.

**i.      The nature of the conditions during the lockdown**

In turning first to the nature of the conditions, Plaintiff indicated that the toilet in his cell was filthy, backed up, that his cell had filthy floors and that he was refused cleaning supplies (Doc. 8).[4] As a general matter, Plaintiff's allegations about the conditions and being denied cleaning supplies during the lockdown cannot, by itself, rise to the level of an Eighth Amendment violation. *See Lunsford v. Bennett*, 17 F.3d 1574 (7th Cir. 1994) (holding that the temporary denial of cleaning supplies did not violate the Eighth Amendment when the record lacked evidence that prisoners' cells were "unusually dirty or unhealthy, or that health hazards existed"); *Geder v. Godinez*, 875 F. Supp. 1334, 1341 (N.D. Ill. 1995) (accumulated dust and dirt is insufficient to establish a specific deprivation of a human need). There is no evidence the cells were unusually dirty, unhealthy, or presented a health hazard. Moreover the evidence demonstrates that cleaning supplies was available to inmates in H-Block during the lockdown. The Jail's Mop/Broom Log for H-Block shows that the mop and broom were checked out by

---

[4] Plaintiff signed his complaint and declared, under penalty of perjury, that the matters alleged in it are true and thereby converted his complaint to a verified complaint. *See Ford v. Wilson*, 90 F.3d 245 (7th Cir. 1996) (by declaring under penalty of perjury that a complaint is true, and by signing it, a *pro se* plaintiff can convert his complaint into a verified complaint and the Court may consider factual allegations therein so long as the facts are consistent with Fed. R. Civ. P. 56(c)). This means that the factual allegations in Plaintiff's complaint, which are consistent with the requirements of Fed. R. Civ. P. 56(c), may be considered in deciding summary judgment.

detainees on November 29th, November 30th, December 1st, December 7th, December

8th, December 12th, and December 14th (Doc. 56-10, p. 3). While it is true the Mop/Broom

Log does not indicate which detainees checked out the mop and broom, it is abundantly

clear that the mop and broom were readily available to the inmates (*Id*).

It is also clear that maintenance work occurred on H-Block during the lockdown.

The evidence clearly establishes that maintenance occurred on December 2, 2016 to

remedy issues with a sink, shower, and toilet in different cells (Doc. 56-11). So even if the

toilet was backing up as Plaintiff claimed, the issue was resolved in short order.

In Plaintiff's response to the motion for summary judgment, he contends that he

was exposed to fecal matter while confined (Doc. 62, p. 7-8). But this reference to fecal

matter does not come in the form of an affidavit and appears in the argument section of

Plaintiff's response. As best the Court can tell there is only one reference to fecal matter

in the record and it is a passing reference in Plaintiff's deposition when talking, generally,

about issues with plumbing and a urinal (Doc. 56-1, pp. 22-23). He did not provide any

specifics during his deposition or claim that he was exposed to fecal matter for any length

of time. Nor did he describe this as an issue in his complaint (*Id*.).[5]

---

[5] The Seventh Circuit has recognized Eighth Amendment conditions claims involving exposure to human waste. *See Wheeler v. Walker*, 303 Fed.Appx. 365, 368 (7th Cir. 2008) (finding prisoner stated a claim where he alleged that "for two weeks prison guards, without explanation, ignored his requests for basic cleaning supplies while he was exposed to a combination of a heavy roach-infestation, filth, and human waste"); *Vinning-El v. Long*, 482 F.3d 923, 923-25 (7th Cir. 2007) (reversing summary judgment where a prisoner spent six days in a cell with blood and feces smeared on the walls, water covering the floor, and a broken sink). Plaintiff gives no specifics about the nature and extent of his exposure to fecal matter. Rather, he provided one conclusory and passing statement about it in his deposition. This one passing reference, without more, is insufficient.

Plaintiff also claimed that he was denied hygiene products such as tooth paste, which he says exacerbated his existing tooth problems (Doc. 8). From the outset, its important to note that there is no evidence in the record that connects the lack of toothpaste to his November 29th dental work. Plaintiff testified that he was able to shower during lockdown, he had soap, toilet paper, and a toothbrush (Doc. 56-1, pp 21-22). Plaintiff testified he ran out of toothpaste during the lockdown, which is an item that needs to be ordered from the commissary and that he was not able to do so until December 7th or shortly thereafter (*Id*.). But based on Plaintiff's testimony, a delay in receiving commissary items appears to be fairly routine as he indicated that commissary items are normally ordered on a kiosk and then delivered about a week later (*Id*., p. 22). Ultimately, Plaintiff was potentially without toothpaste (but still had his toothbrush) for three or four days from November 26th–November 29th and for approximately one week when he returned from the infirmary on December 6th. But it is important to note that the opportunity to purchase toothpaste from the commissary was returned as early as December 7th (Doc. 56-1, p. 21), but Plaintiff did not place an order for toothpaste until December 11th (Doc. 56-13, p. 26). So some of the time without toothpaste is attributable to Plaintiff. Ultimately, Plaintiff's claim regarding the condition of his cell and the lack of toothpaste for a short period of time does not rise to the level of a constitutional deprivation. *Lee v. Washington*, No. 97 C 4710, 1999 WL 759609, at *6 (N.D. Ill. Aug. 31, 1999) (denial of personal hygiene items such as soap, toothpaste and deodorant for two weeks does not rise to the level of a constitutional violation); *Martin v. Lane,* 766 F. Supp. 641, 648 (N.D.Ill.1991) (deprivation of hygienic supplies and laundry services for between

three and eighteen days did not constitute a violation of a prisoner's Eighth Amendment rights); *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir.1988) (allegations that a prisoner was kept in a filthy, roach-infested cell without toilet paper for five days and without soap, toothpaste, or a toothbrush for ten days did not "reach unconstitutional proportions").

Plaintiff also says he was denied access to the law library while on lockdown (Doc. 56-1, pp. 4, 6). As a general matter, a denial of access to a prison law library or other legal materials is not itself a violation of a prisoner's rights because his right is to access to *the courts*. *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Plaintiff does not make any suggestion that his criminal case (or a civil case for that matter) was prejudiced in any way by a restriction on his access to the law library. [6] And to the extent Plaintiff's claim about access to the law library is focused on the restriction of his movement throughout the Jail, a few days or at most 1-2 weeks of restricted movement that does not allow for law library visits does not qualify as a denial of the minimal civilized measure of life's necessities. [7]

---

[6] In any event, the Court previously dismissed Plaintiff's access to the courts claim without prejudice in its merits review (*See* Doc. 9).

[7] It is also important to note that Plaintiff has offered nothing more than a conclusory assertion that he was denied access to the law library. He provides no evidentiary support or concrete facts. "Where the Plaintiffs' vague and conclusory assertions are not supported by specific, concrete facts, their assertions must be disregarded." *Hale v. Stoffel*, No. 1:17-CV-108-HAB, 2019 WL 2270352, at *8 (N.D. Ind. May 28, 2019). In fact, the record evidence demonstrates that contrary to Plaintiff's conclusory statement, inmates from H-Block accessed the law library on December 7th and December 14th (Doc. 56-18, pp. 14, 23, 31).

###### ii.      The duration of the lockdown

In considering the length of the lockdown, the parties tell different stories how

long it lasted. Defendant Pannier claims it was over on December 7th and Plaintiff claims

it was still going on as of December 14th when he was transferred to AB-Block. For the

purposes of summary judgment, the Court will accept the Plaintiff's version of events.

This means that Plaintiff was on lockdown in H-Block from November 25, 2016 until

November 29th, at which time he was transferred to the infirmary (Doc. 56-6, p. 11; Doc.

56-1, p. 26). Plaintiff remained in the infirmary until December 6th and then he returned

to H-Block (Doc. 56-6, p. 11). The next day, Plaintiff and the rest of H-Block received

phone and visit privileges back as well as hygiene privileges from the commissary (Doc.

56-1, p. 21-22).

The duration of a condition is critical to determining whether there is a

constitutional deprivation. In *Smith v. Schwartz*, No. 10-721-GPM, 2011 WL 2115831, (S.D.

Ill. May 26, 2011), a plaintiff alleged that while incarcerated he was subjected to a

lockdown for over a month, during which he claimed he was denied cleaning supplies,

laundry service, and permission to take a shower. *Id*. The court concluded that a

deprivation of this nature for thirty-two days did not rise to the level of an Eighth

Amendment violation. *Id*. at *3. *See also, e.g., Harris*, at 1232, 1235 (allegations of a filthy,

roach-infested cell without toilet paper for five days and without soap, toothpaste, or a

toothbrush for ten days did not rise to level of a constitutional violation); *Washington*, No.

97 C 4710, 1999 WL 759609, at *6-7 (N.D. Ill. Aug. 31, 1999) (denial of personal hygiene

items such as soap, toothpaste, and deodorant for two weeks not unconstitutional);

*Martin*, 766 F. Supp. at 648 (N.D. Ill. 1991) (deprivation of laundry services and hygienic supplies up to eighteen days did not constitute a violation of a prisoner's Eighth Amendment rights).

At best, Plaintiff was in the lockdown for 12-13 days on H-Block. For three or four days from November 26th–November 29th and for approximately one week after he returned from the infirmary, Plaintiff was without toothpaste, but had a toothbrush. And some of that delay in receiving toothpaste was attributable to Plaintiff, not the Jail. Nearly all privileges except for movement and TV were restored on December 7th (Doc. 56-1, p. 26). Simply put, no reasonable juror would find that Plaintiff can satisfy the objective prong of his Eighth Amendment claim and summary judgment could be warranted on that issue alone.

## B. Subjective Component – Defendant Pannier's State of Mind

The subjective component of a claim for unconstitutional conditions of confinement considers whether the defendant had a sufficiently culpable state of mind in that he acted with deliberate indifference to a substantial risk of serious harm to the prisoner. *See Farmer*, 511 U.S. at 837, 842. A plaintiff satisfies the deliberate indifference standard by showing that a prison official acted, or failed to act, despite the official's knowledge of a substantial risk of serious harm from the alleged unconstitutional conditions. *Id.*; *Davidson v. Cannon*, 474 U.S. 344, 347-348 (1986).

There is no dispute Defendant Pannier made the decision to place H-Block on administrative lockdown as a result of the altercation and subsequent lack of participation and cooperation from inmates on the block (Doc. 56-5; 56-6, pp. 6-10).

Defendant Pannier contends that Plaintiff has failed to identify a particular action or involvement by him that shows he had the mental state necessary to maintain a claim for deliberate indifference. Plaintiff argues that Defendant Pannier knew of his complaints because of the sheer volume that he submitted (Doc. 62). And while it may be true that Plaintiff submitted a host of complaints, the Court cannot find any evidence in the record demonstrating that a complaint was submitted to Defendant Pannier or reviewed by him regarding the conditions on H-Block. In short, Plaintiff has identified no evidence that would bear on Defendant Pannier's state of mind or raise an inference that he knew of a risk to Plaintiff and consciously disregarded it.

Moreover, Defendant has provided a legitimate reason for placing H-Block on administrative lockdown and avers that the restrictions imposed were consistent with Jail policy (Doc. 56-5). The restrictions imposed by the lockdown were gradually lifted over time and nearly all restored by December 7th (*Id.*; 56-1, pp. 21-26). Other than a conclusory assertion from Plaintiff, there is simply nothing in the record to suggest or even infer that Defendant Pannier had a sufficiently culpable state of mind. Even if the conditions under which Plaintiff was confined satisfied the objective component, there is simply no evidence Defendant Pannier had knowledge of a substantial risk of harm to Plaintiff as a result of the conditions.

## II.     Retaliation

Prison officials may not retaliate against inmates for filing grievances, exercising First Amendment rights, or otherwise complaining about their conditions of confinement. *See, e.g., Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). In a First

Amendment retaliation claim, the burden of proof is split between the parties. *See Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013) (citing *Mt. Healthy Board of Education v. Doyle*, 429 U.S. 274 (1977)). First, Plaintiff must show that defendant's conduct was sufficient to cause the injury, that is, that the protected First Amendment conduct was a motivating factor for taking the retaliatory action. *Id.* at 634-635. The burden to show that the protected conduct was the motivating factor for the retaliation is "high." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). The burden then shifts to the defendant to rebut by showing that the action would have occurred anyway, regardless of the improper motive. *Mays*, 719 F.3d at 635. A complaint states a claim for retaliation when it sets forth "a chronology of events from which retaliation may plausibly be inferred." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 (7th Cir. 1988)).

Defendant Pannier argues that there is no evidence that the action he took in implementing a lockdown on H-Block was based on a retaliatory motive. Defendant Pannier also contends the deprivations Plaintiff complains of are not sufficient to deter First Amendment activity. It is on this first point that Defendant clearly prevails.

Plaintiff indisputably filed complaints and grievances, which are activities protected by the First Amendment.[8] *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010).

---

[8] The record reflects that Plaintiff submitted three complaints to Jail staff in the time leading up to his placement in H-Block where Defendant was the Lieutenant and four additional complaints between May 18, 2016 and November, 2016, none of which grieved the issues in this case (Doc. 18-6). There is also ample evidence in the record demonstrating that Plaintiff frequently submitted grievances and/or captain's complaints while at the jail (*See, e.g.*, Doc. 43 adopted at Doc. 46).

But there is simply no connection in the record between Plaintiff's complaints and Defendant Pannier ordering the lockdown. Defendant ordered H-Block to be placed on administrative lock down because of an incident of physical violence, the level of participation in the incident, and the subsequent lack of cooperation from the occupants of the block (Doc. 56-5; 56-6, p. 6, 10). The lockdown applied to all inmates on H-Block and the loss of certain privileges was universal across the block (*Id.*). Nor is there any evidence in the record to suggest Plaintiff was treated differently during the lockdown in retaliation for his grievances. In fact, Plaintiff testified that no one from the Jail, including Defendant Pannier, made any comments about the lockdown being an act of retaliation against him or even hearing any rumor to that effect (Doc. 56-1, pp. 89-90).

The Court is skeptical that any of the conduct Plaintiff complains of would be sufficient to deter First Amendment activity in the future. In fact, the record indicates Plaintiff was not deterred because he continued to file complaints after December 14, 2016 (Doc. 18-1). But ultimately, the Court need not pass on this issue because it is manifestly clear that there is no evidence that the lockdown or any deprivation resulting from the lockdown, was done in retaliation for Plaintiff filing complaints. Accordingly, Defendant Pannier is entitled to summary judgment.

## CONCLUSION

For the above-stated reasons, Defendant's motion for summary judgment (Doc. 56) is **GRANTED** and this action is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant Pannier and against Plaintiff and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: November 25, 2020**

<u>s/  Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**